UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ANTHONY LALONDE,

                              Petitioner,

        v.                                            9:20-CV-1561
                                                      (GTS)

SUPERINTENDENT THOMAS, Superintendent,
Five Points Correctional Facility,

                              Respondent.

_____

APPEARANCES:                              OF COUNSEL:

ANTHONY LALONDE
Petitioner pro se
13-A-3085
Five Points Correctional Facility
Caller Box 119
Romulus, NY 14541

HON. LETITIA JAMES                        PRISCILLA I. STEWARD, ESQ.
Attorney for Respondent                   Ass't Attorney General
New York State Attorney General
28 Liberty Street
New York, NY 10005

GLENN T. SUDDABY
Chief United States District Judge

**DECISION and ORDER**

**I.      INTRODUCTION**

        Pro se petitioner Anthony Lalonde ("Lalonde" or "petitioner") seeks federal habeas

corpus relief pursuant to 28 U.S.C. § 2254.  Dkt. No. 1 ("Pet.").  Respondent ("Thomas" or

"respondent") was directed to answer the petition.  Dkt. No. 7.  Respondent opposed the

petition.  Dkt. No. 16, Answer and Memorandum of Law in Opposition ("Resp. Memo.");  Dkt.

No. 17, State Court Records.  Petitioner has filed a traverse.  Dkt. No. 21 ("Traverse").  For

the reasons that follow, Lalonde's habeas petition is denied and dismissed.

## II.    RELEVANT BACKGROUND

The following underlying facts were summarized by the New York State Appellate

Division:

> On the evening of November 18, 2010, 83–year–old Russell Lawton
> (hereinafter the victim) and his 67–year–old roommate, Guy Bartlett,
> were eating pizza in the kitchen of their shared second-floor
> apartment at 930 Ford Street in the City of Ogdensburg, St. Lawrence
> County, when three individuals wearing masks, dark clothes and
> gloves entered their residence and demanded that the victim turn over
> his money. While attempting to empty the victim's pockets, one of the
> intruders tipped over the chair in which the victim was sitting, knocking
> him to the floor. Bartlett then scuffled with one of the intruders while
> attempting to grab hold of a wooden "stick" that the intruders had
> brought with them and he was also knocked to the ground. Two of the
> intruders then picked Bartlett up, threw him on top of the victim and
> then left the apartment. Bartlett then checked the victim's pulse and,
> not finding one, called 911. The victim was subsequently administered
> CPR and thereafter brought to the hospital where he was pronounced
> dead a short time later.

*People v. Lalonde,* 74 N.Y.S.3d 638, 641 (App. Div. 3rd Dep't 2018).

### A.  Investigation

On March 21, 2011, Victor Gardner ("Gardner") was brought to the Ogdensburg Police

Department for questioning with regard to his alleged involvement in an unrelated burglary.

*Lalonde*, 74 N.Y.S.3d at 648, n. 4.  During the interview, Gardner claimed to have information

about the Lawton murder and agreed to wear a wire in order to obtain statements from those

individuals that he alleged were involved.  *Id*.  On March 21, 2011, Detective Sergeant Burns

("Det. Burns") prepared a "Supplemental Report" with respect to the interview.  In the report,

Burns noted Gardner, "said if he did this he could solve this murder case in Oburg [sic] right

now." SR at 139.[1]   Burns also commented that Gardner, "wants to see his kids and stuff.  I

said you said something about a murder case.  He said that he could guarantee that case, he

was getting nervous about going to jail.  He then went on to talk about the murder case and

how he knew about it."  *Id*. at 140.  Burns reported that he went, with Gardner, to meet with

Rob Wescott at OPD.  *Id*.  Burns wrote:

> While at PD he gave a statement to Det Westcott and I left him
> there with the understanding he was going to wear a wire and
> get the three people he named to admit they did a murder.  I
> made it clear to him at the PD that if he didn't do what he said
> that he was going to be in trouble that I was not going to see
> what we could do about the Burglary charge and he would be
> charged with that.  He said he understood and that he was
> willing to get all three of them to talk about the murder while
> wearing a wire.

SR at 140.

On August 3, 2011, Gardner appeared in court for a plea hearing with respect to "a

number of charged cases." SR at 108.  Gardner was represented by Attorney Heather Dona

of the Conflict Defender's Office and Assistant District Attorney ("ADA") Amanda Nissen

appeared on behalf of the prosecution.  *Id*. at 104.  As part of a plea agreement, Gardner

agreed to cooperate with the People with regard to the Lawton murder investigation.

*Lalonde*, 74 N.Y.S.3d at 646.

### B.  Initial Proceedings

On June 19, 2012, petitioner appeared in St. Lawrence County Court for arraignment

on a two-count indictment charging him, and co-defendants Michael Thorpe ("Thorpe") and

---

[1] "SR" refers to the state court record, found at Dkt. No. 17 and "T" refers to the trial transcript from court proceedings, found at Dkt. No. 17-1.  Citations to the submissions refer to the pagination generated by CM/ECF, the Court's electronic filing system.

3

Michael Durand ("Durand"), with robbery in the first degree and murder in the second degree for events that occurred on November 18, 2010.  SR at 53-54.  During the arraignment, the court assigned Amy L. Dona, Esq. ("Attorney Dona") of the Conflict Defender's Office to represent petitioner.  SR at 70.  After the arraignment, Attorney Dona sent a letter advising the county court that her office represented Gardner while he was cooperating with law enforcement.  *Id*.  Attorney Dona requested that the court assigned a new attorney for petitioner "due to the conflict of interest."  *Id*.  The court denied to Attorney Dona's request and reasoned, "[y]our knowledge of Mr. Gardner's cooperation would appear to be an advantage to [petitioner]."  SR at 1362.

On November 30, 2012, Attorney Dona filed an Order to Show Cause seeking to have her office relieved of its duties as attorney of record for the petitioner.  SR at 71-79.  Attorney Dona explained that, upon receipt of discovery from the District Attorney's Office, she became aware that her office represented 17 individuals named in the discovery materials, including Gardner.  *Id.*  On December 7, 2012, the court held a hearing with respect to the motion, with petitioner present.  *Id*. at 899-908.  The court relieved Attorney Dona from representing petitioner.  *Id*.

### B.  Trial

A joint jury trial was held in April 2013.  T. at 1.  The prosecution called Adam Wells ("Wells"), petitioner's brother-in-law.  T at 888.  Wells testified that Mike Lalonde called him on November 18, 2010 and "asked if [he] wanted to go and do a job with my brother-in-law."  *Id*. at 890.  Mike asked Wells to bring his ax handle so that Mike could use it to split wood.  *Id.* at 891.  Wells brought the ax and gave it to Christine Lalonde.  *Id*.  Wells testified about a conversation that occurred related to a robbery.  T at 888-893.  Wells, Victor Gardner, Brandi

4

Gardner, Mike Lalonde, Christine Lalonde, and petitioner took part in the conversation that was held at Mike Lalonde's home.  *Id*.  Wells did not participate in the robbery and learned of the murder the next day.  *Id*. at 895-900.  Approximately one month later, Wells asked petitioner "where the ax handle went" and petitioner responded, "it's gone.  It never will be found."  *Id*. at 902.

During Wells' testimony, counsel and the court engaged in a side-bar discussion.  T. at 926.  The prosecution stated:

> As the Court is aware and the defense counsels probably not, Mr. Gardner, when he entered his plea, one of his conditions was that he give up a great deal of information on uncharged crimes. Several of those crimes were committed based on the information that Mr. Gardner provided with Mr. Lalonde.

T at 929.

The prosecution called Harlow Perry as a witness and introduced into evidence a March 2011 written statement by Harlow Perry to the police.  T at 2122.  In the statement, Perry stated that petitioner told him the "cops had him in and were going to get him for old man Gene's murder. He said that they had his DNA but that he had it covered, because he watched Crime Files."  *Id*. at 2122-2123.

The prosecution called Victor Gardner.  Gardner testified that, on the evening of November 18, 2010, petitioner asked him if he wanted to participate in a robbery.  T at 1077. The conversation took place in petitioner's bedroom[2] with Samantha Mashaw and Andy Wells present.  *Id.* at 1077-1079.  Gardner also overheard telephone conversations between petitioner and Thorpe related to the robbery.  *Id*. at 1085.  Gardner decided not to participate

---

[2]  At the relevant time, Petitioner resided with his brother, Mike Lalonde ("M. Lalonde").  T at 1077.

and watched petitioner and Mashaw leave the house in Mashaw's vehicle.  T at 1087. Sometime later, petitioner's brother, M. Lalonde and Gardner drove to Denny Street.  *Id*. at 1089.  Gardner saw Mashaw's car and thought, "oh, they're really doing it" and then drove back to M. Lalonde's house.  *Id.* 1091.  When they arrived, M. Lalonde received a telephone call, so they got back into the vehicle to drive to New York Avenue to pick up petitioner, Mike Thorpe and Mike Durand.  T at 1092-1093.   M. Lalonde pulled into a driveway, went into a house, and came out with petitioner, Mike Thorpe and Mike Durand.  *Id.* at 1094.  Gardner described petitioner and Thorpe as "panicky" and testified that they said "they didn't end up doing it." *Id*. at 1095-1096.  M. Lalonde drove to Thorpe's house where Thorpe and Durand got out of the vehicle.  T at 1098.  Gardner could see the victim's house "down the road" and saw "cops, ambulance, and fire department." *Id*. at 1097.  M. Lalonde commented on the police presence and petitioner stated, "like, yo, we didn't do it, somebody did it before us." *Id*. at 1099.

Gardner, M. Lalonde, and petitioner drove to Black Bridge and stopped the vehicle in the middle of the bridge.  T at 1102.  Petitioner exited the vehicle and took a hat, two wallets, and one glove and threw them over the bridge.  *Id*. at 1102-1103.  Petitioner returned to the vehicle and they drove to M. Lalonde's house.  *Id*. at 1103.  When they pulled into the driveway, they were told that Lawton died.  *Id*. at 1104.  Later that night, petitioner told Gardner they entered the apartment, the victim started struggling, petitioner put him in a "headlock" and another person attempted to empty his pockets.  T at 1111.  Petitioner admitted "they didn't get much" and when they ran out, someone dropped a glove.  *Id.*

The next day, petitioner told Gardner that he "hoped everybody kept their mouth shut, that there was no evidence other than the glove that fell," which petitioner admitted was his.

T at 1120-21.

Prior to cross examination, counsel and the court engaged in a discussion, outside of the presence of the jury.  T at 1162.  Counsel for Durand stated, "[the prosecution] disclosed to us several days ago, or last week even, Gardner, in return for his cooperation, wanted a deal where [Josh Pitts] would not go to jail [. . .] apparently, his wife was living with Pitts and Pitts was taking good care of his kids.  *Id*.  In response, the prosecution stated, "[a]nd I didn't make him any promises.  I said I would see what I can do. I put the note in the file. I wasn't there for his sentencing, but he didn't go to jail." *Id.* at 1162-1163.

On cross examination, Gardner claimed he was not aware that he would be offered immunity from prosecution with regard to the events surrounding Lawton's death.  T at 1174. Gardner was asked if he requested something in return for his cooperation into the investigation.  *Id.* at 1202.  Gardner responded, "not at first," but at the beginning of the trial, he asked the District Attorney to assist Joshua Pitts in avoiding jail on a pending conviction. *Id.* at 1202-1203.   The District Attorney offered to "look into it" but "couldn't guarantee anything." *Id*. at 1203.

 Samantha Mashaw ("Mashaw") testified that she drove petitioner to Denny Street and observed him get out of the vehicle and "disappear" around the side of a nearby building. *Lalonde*, 74 N.Y.S.3d at 642.  The prosecution also called Shawn McGregor ("McGregor"), an inmate who was housed with petitioner in the county jail.  T at 1476-1478.  McGregor testified that he discussed the robbery with petitioner on "more than one occasion" and that petitioner admitted to the robbery "to get drugs."  T at 1482-1483, 1488.  Petitioner told McGregor he left a glove at the crime scene and he was "scared that his DNA was in it."  *Id*. at 1482.  Petitioner told McGregor that he intended to say that another "guy had access to

7

his brother's house" and "planted the glove[.]"  *Id*. at 1499.

   The lead investigator, Detective Wescott ("Det. Wescott"), testified that a glove and an ax were recovered from the scene.  *Lalonde*, 74 N.Y.S.3d at 642.  The prosecution introduced DNA evidence that hair on the handle of an ax belonged to petitioner.  *Id*. at 643.  Det. Wescott also provided testimony regarding petitioner's interview with police.  *Id*.  Wescott testified that petitioner was asked if he ever planned a robbery at "Gene's" and initially said "no" but, upon further questioning, he admitted he was involved in the planning and that he was trying to "recruit" a third person.  T at 1662-1663.  Det. Wescott testified that petitioner told him that an individual called "Rooster" approached him about the robbery and while Rooster "didn't tell him where it was going to be or who it was going to be," when they discussed it further, Rooster "told him it was going to be an easy lick or that the person was an easy mark" and so petitioner asked, "old man Gene as a question, and the person smirked at him, so he just assumed Gene."  *Id.* at 1663-1664.

   Alex Mozingo ("Mozingo") testified that, on November 18, 2010, he was involved in a conversation with petitioner about planning a robbery.  T at 1965.

   During summation, Durand's counsel referred to Gardner:

> The Judge will tell you in his charge how you can view Victor Gardner's legal role, if any, in this crime, and he will tell you what effect you may give it on his testimony and his credibility. Please listen to that instruction very carefully.

T at 2051.

   Counsel told the jury that Gardner was arrested for twelve felonies with three felony convictions and stated:

> When asked about the planning of the robbery on the 18th of November, he said, "I was in a room, yes, I was. I was involved

8

in the conversation, yes." He testified that no one promised him anything for his testimony in the grand jury, but he's not sitting over there as a defendant, you will notice, and neither is Sam Mashaw.  He was asked, "You had no concern that you might be arrested for your part in this?" And his answer, "No, because I feel that I didn't do anything wrong. The fact is, I had no involvement in the actual robbery. In the actual robbery. Listen please to the Court's charge on accomplices, corroboration. These legal instructions are very, very important in this case.

T at 2051-2052.

Petitioner's attorney told the jury:

If you credit Victor's testimony, then you have to believe that he was present for the planning of the robbery, didn't do it because he listened to his now estranged wife, helped pick up the people who did it and went with some of them to get rid of evidence that he could explain almost perfectly just by being in the backseat of the vehicle. Then went back, overheard some more conversations, then left that place and then went to where other people who he alleges were involved and then, meticulously, interrogated both of them separately. And, ultimately, four months later, gives a statement to the police about all this stuff that he learned. And all of this from a guy who we know has a criminal history, and we know that involves robbery.

T at 2092.

During the People's summation, counsel referred to Gardner:

I submit to you that having - - that him coming in here and telling you the things that he told you was not easy for him.  It was not easy for him to testify against someone that he cared about. That he testified he got nothing in exchange for his testimony and that only adds to his credibility.

T at 2108.

On May 7, 2013, the jury found Lalonde guilty of robbery in the first degree and murder in the second degree.  T at 2198.  The co-defendants were acquitted by the same jury.  SR at 175.  Petitioner was sentenced to a determinate term of incarceration of 22 years

9

plus five years post release supervision for the robbery conviction and an indeterminate term of incarceration of 22 years to life with respect to the murder conviction.  *Id*.

On July 8, 2013, petitioner filed a Notice of Appeal.  SR at 415.

### C.  First Motion to Vacate Judgment

In May 2016, petitioner filed a pro se motion to vacate his conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10.  SR at 4-140.  Petitioner argued (1) the prosecution committed a *Brady*[3] violation by withholding details of Gardner's cooperation agreement; (2) the prosecutor engaged in misconduct by failing to correct Gardner's false testimony and referring to the false testimony during summation; and (3) newly discovered evidence; i.e., the details of Gardner's agreement, would have changed the outcome of the trial.  *Id*.  The People opposed the motion.  *Id*. at 141-152.  Petitioner filed a reply to the opposition.  *Id.* at 168-173.

On November 21, 2016, the county court denied petitioner's motion.  SR at 175-178. First, the court rejected the *Brady* claim because petitioner was aware "early on in the proceedings" that Gardner "obtained a plea offer [. . .] that included cooperation against the defendant."  *Id*. at 176.  The court also concluded petitioner could not establish prejudice:

> Clearly, Mr. Gardner's testimony was not given much weight, if any, by the jury. Multiple defense attorneys vigorously cross-examined Mr. Gardner about any consideration he was receiving from the People as part of the case and his extensive criminal history dating back to his teenage crimes before he began being charged as an adult.  There is no reasonable probability that the verdict would have been different had the defendant known the specific details of the agreement and was able to use them at trial.

---

[3]  *Brady v. Maryland*, 373 U.S. 83 (1963).

10

SR at 177.  Second, the court rejected petitioner's prosecutorial misconduct claim reasoning, "[t]here were no objections and no record made" at the time of Gardner's testimony or the summation.  *Id.*  Finally, the court was not persuaded by the argument that the jury's verdict would have been different if petitioner was aware of the specific details of Gardner's agreement.  *Id.* at 177.  The court noted, "[. . .] the jury acquitted two of petitioner's co-defendants.  Clearly, Mr. Gardner's testimony was not given much weight[.]"  *Id*.  Moreover, the court reasoned, "multiple defense attorneys vigorously cross-examined Mr. Gardner about any consideration he was received from the People" and summarized the "overwhelming evidence of [petitioner's] guilt."  SR at 177.  The court concluded, "there is no reasonable possibility that the lack of the specific evidence or the prosecution's summation contributed to the jury's verdict."  *Id*.

Petitioner sought leave to appeal to the Appellate Division and Court of Appeals, which were denied.  SR at 190, 391.  Petitioner moved for reconsideration.  *Id.* at 375-389. On April 27, 2017, the Appellate Division granted petitioner's application to appeal the denial of his post-conviction motion and ordered the appeal consolidated with his direct appeal.  *Id*. at 390.

### D.  Direct Appeal

Lalonde appealed his conviction and, in a counseled brief to the Appellate Division, Third Department, asserted that: (1) the verdict was against the weight of the evidence; and (2) the sentence was harsh and excessive.  SR at 601-627.  Petitioner also filed a pro se supplemental brief and argued the county court abused its discretion in denying petitioner's CPL § 440.10 motion without a hearing.  *Id.* at 631.  The People opposed.  *Id.* at 855-1321.

On April 5, 2018, the Appellate Division found that the convictions for robbery in the

first degree and murder in the second degree were not against the weight of the evidence. *Lalonde*, 74 N.Y.S.3d at 645.  Indeed, the court found that "there was ample evidence presented at trial establishing [petitioner's] presence at and participation in the subject robbery."  *Id.* at 642.  The Appellate Division also found no "extraordinary circumstances" to warrant a reduction of petitioner's sentence.  *Id.* at 645.

With respect to petitioner's CPL § 440 motion, the Appellate Division rejected petitioner's *Brady* claim noting that the People "did have a cooperation agreement with Gardner," but, that fact "was known to defendant months before his 2013 trial and, therefore, such agreement was apparent on the face of the record and could or should have been placed on the record during trial."  *Lalonde*, 74 N.Y.S.3d at 646 (internal citations and citations omitted).  The court held, even assuming the People violated *Brady*, petitioner failed to establish the materiality of the evidence.  *Id.* at 647.  To wit, the court noted "Gardner's testimony did not go wholly unimpeached - he was cross-examined regarding the fact that he had requested leniency from the People with regard to a friend's unrelated pending criminal charges in return for his testimony, and he was also questioned regarding his extensive criminal history."  *Id*.  The court reasoned, "given the strength of the evidence against [petitioner] and the independent proof separate and apart from Gardner's testimony establishing [petitioner's] participation in the robbery, we find that there was no reasonable possibility that, had this impeachment material been timely disclosed, the jury would have reached a different verdict."  *Id*. (citations omitted).  Moreover, due to "the strength of the evidence" against petitioner, the court concluded "there was no reasonable possibility that, had this impeachment material been timely disclosed, the jury would have reached a different verdict."  *Lalonde*, 74 N.Y.S.3d at 647.

12

The court also found petitioner's arguments regarding prosecutorial misconduct "unpreserved for review." *Lalonde*, 74 N.Y.S.3d at 647. Petitioner's "remaining contentions, to the extent not specifically addressed," were "examined and found to be lacking in merit." *Id*. at 648.

Petitioner sought leave to appeal to the New York Court of Appeals, and that application was denied on June 28, 2018. SR at 1331-1334.

### E.  Second CPL § 440 Motion

In July 2019, petitioner filed a second *pro se* motion to vacate his conviction. SR at 1335-1510. Petitioner argued: (1) due to a conflict of interest, Attorney Dona provided ineffective assistance; and (2) his trial counsel was ineffective. *Id.* The People opposed the motion. *Id*. at 1512-1538. Petitioner responded. *Id*. at 1539-1546.

On February 21, 2020, the county court denied the motion without a hearing. SR at 1548-1557. The court found that petitioner's motion was procedurally barred pursuant to §§ 440.10(3)(a) and (c). *Id*. at 1553. In the alternative, the court found petitioner's "conflict-based ineffective assistance of counsel" claim "wholly without merit." *Id*. at 1555. The court also held that petitioner failed to offer evidence to support his claim that trial counsel was ineffective in his cross examination of Gardner. SR at 1556.

On May 18, 2020, the Appellate Division denied petitioner's application for leave to appeal. SR at 1577.

### III.    PETITION

Lalonde contends he is entitled to federal habeas relief for the following reasons: (1) ineffective assistance of counsel due to a conflict of interest (Ground 1); (2) ineffective assistance of trial counsel (Ground 2); (3) the prosecutor's failure to disclose *Brady* material

13

(Ground 3); (4) prosecutorial misconduct (Ground 4); and (5) the discovery of new evidence (Ground 5).  Pet. at 5-19.

## IV.    LEGAL STANDARDS

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. §§2254(d)(1), (2); *Cullen v. Pinholster*, 563 U.S. 170, 180-81, 185 (2011); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011);  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt."  *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted)).

The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.'"  *Nevada v. Jackson*, 569 U.S. 505, 508-509 (2013) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Metrish v. Lancaster*, 569 U.S. 351, 358 (2013) (explaining that success in a habeas case premised on § 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on

'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'") (quoting *Richter*, 562 U.S. at 103)).

Additionally, the AEDPA foreclosed "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 567 U.S. 37 (2012) (per curiam) (quoting *Renico,* 559 U.S. at 779).  A state court's findings are not unreasonable under §2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion.  *Wood v. Allen*, 558 U.S. 290, 301 (2010).  "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Schriro*, 550 U.S. at 473.

Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "clear and convincing evidence." *Schriro*, 550 U.S. at 473-74 (quoting § 2254(e)(1)).  "A state court decision is based on a clearly erroneous factual determination if the state court failed to weigh all of the relevant evidence before making its factual findings." *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015).  Finally, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits[.]" *Johnson v. Williams*, 568 U.S. 289, 301 (2013).  If there is no adjudication on the merits then the pre-AEDPA de novo standard applies.  *See Cotto v. Herbert*, 331 F .3d 217, 230 (2d Cir.2003).

## B. Exhaustion

Prior to seeking federal habeas relief, a petitioner must exhaust available state

remedies or establish either an absence of available state remedies or that such remedies cannot adequately protect his rights. *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (citing 28 U.S.C. § 2254(b)(1)); *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994). The exhaustion doctrine recognizes "respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions." *Daye v. Att'y Gen. of New York*, 696 F.2d 186, 191 (2d Cir. 1982); *see also Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005) ("Comity concerns lie at the core of the exhaustion requirement."). Though both federal and state courts are charged with securing a state criminal defendant's federal rights, the state courts must initially be given the opportunity to consider and correct any violations of federal law. *Galdamez*, 394 F.3d at 72 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)). "The chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Daye*, 696 F.2d at 192. This exhaustion requirement is satisfied if the federal claim has been " 'fairly present[ed]' " to the state court. *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). A claim has been "fairly presented" if the state court was apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court." *Daye*, 696 F.2d at 191. A petitioner may fairly present the constitutional nature of his claim in the following manner:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye*, 696 F.2d at 194.

### C. Procedural Bar

It is "well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.' " *Walker v. Martin*, 562 U.S. 307, 315 (2011) (quoting *Beard v. Kindler*, 558 U.S. 53, 55 (2009)) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991))). Even if the state court proceeds to consider the merits of an unpreserved claim, its reliance on a procedural ground as one basis for the denial of the claim precludes habeas review. *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) ("a state court need not fear reaching the merits of a federal claim in an alternate holding" because "the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.") (emphasis in original).

Procedurally defaulted claims are not subject to habeas review unless a petitioner shows cause for the default and resulting actual prejudice, or that the denial of habeas relief would result in a fundamental miscarriage of justice, i.e., that he or she is actually innocent. *House v. Bell*, 547 U.S. 518, 536-39 (2006); *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014). To establish cause, petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). Prejudice requires a petitioner to show "not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial

17

disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (quoting *United States v. Frady*, 456 U.S. 154, 170 (1982)) (alteration in original).  If a petitioner fails to establish cause, a court need not decide whether he suffered actual prejudice.  *See id.* at 496 (referring to the cause and prejudice test "in the conjunctive"); *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985).

Courts have also recognized an equitable exception to the procedural bar in cases where a petitioner can prove actual innocence.  *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).  "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts or critical physical evidence–that was not presented at trial." *Schlup*, 513 U.S. at 324; *see also Whitley v. Senkowski*, 317 F.3d 223, 225 (2d Cir. 2003). In addition, "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.' "  *House*, 547 U.S. at 536-37 (quoting *Schlup*, 513 U.S. at 327); *see also Doe v. Menafee*, 391 F.3d 147, 160-62 (2d Cir. 2004). The Supreme Court cautioned, however, that "tenable actual innocence gateway claims are rare[.]"  *McQuiggan*, 569 U.S. at 386; *see also House*, 547 U.S. at 538 (noting that the actual innocence gateway standard is "demanding and permits review only in the extraordinary case." (quoting *Schlup*, 513 U.S. at 327)) (internal quotation marks omitted).  "The gateway should open only when a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error."  *McQuiggan*, 569 U.S. at 401 (internal quotation marks omitted).  "[A]ctual innocence means factual innocence, not mere legal

18

insufficiency." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)).

## V.   ANALYSIS

For the sake of clarity, the Court considers petitioner's grounds for relief out of order.

### A. *Brady* Violation (Ground 3)

Petitioner claims, as he did in his first CPL § 440 motion and his pro se supplemental brief on direct appeal to the Appellate Division, that the prosecution withheld the following: (1) information concerning Gardner's cooperation agreement; (2) Gardner's statement to Det. Burns; and (3) the minutes from pretrial proceedings related to Gardner's burglary prosecution.  Pet. at 12-13, 16; Traverse at 19-21.  Respondent contends that petitioner was aware of the cooperation agreement before trial and had an opportunity to impeach Gardner. Resp. Memo. at 36.  Respondent also argues that the state court properly decided that Gardner's statement to Det. Burns was not material because there was no reasonable probability that the disclosure  would have affected the outcome of the trial.  *Id*.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87.  "There are three components of a true *Brady* violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).   Disclosure of impeachment evidence is also required under *Brady*.  *United States v. Bagley*, 473 U.S. 667, 676 (1985).  *Brady* is not violated "unless the nondisclosure was so serious that there is a

19

reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler*, 527 U.S. at 281.  Moreover, "*Brady* cannot be violated if the defendant[ ] had actual knowledge of the relevant information or if the documents are part of public records and defense counsel should know of them and fails to obtain them because of lack of diligence in his own investigation." *United States v. Zagari*, 111 F.3d 307, 320 (2d Cir. 1997) (internal quotation marks omitted).

The government has a duty to disclose plea agreements with cooperating witnesses. *Garner v. Superintendent of Upstate Corr. Facility*, No. 9:01-CV-0501(LEK/DEP), 2007 WL 2846907, at *25–26 (N.D.N.Y. Sept. 26, 2007) (citations omitted). However, the failure to disclose cooperation agreements "is only reversible error if it undermines the confidence in the outcome of the trial." *Hemphill v. Senkowski*, No. 02 CIV. 7093, 2004 WL 943567, at *12 (S.D.N.Y. May 3, 2004).

Here, in denying petitioner's first CPL § 440 motion, the county court rejected the claim and observed that petitioner was made aware, early in the proceedings, by his original attorney that Gardner obtained a cooperation agreement against petitioner. SR at 176.  The court also concluded that there was no reasonable probability that the outcome of the trial would have been different if the details of the agreement were disclosed and used by counsel at trial.  *Id.* at 177.  The Appellate Division affirmed the decision and noted that petitioner was aware that Gardner was a cooperating witness for the People months before his 2013 trial.  The Appellate Division also held, even assuming the People failed to disclose the aforementioned evidence in violation of *Brady*, petitioner failed to establish the materiality of the evidence or prejudice.  *Lalonde,* 74 N.Y.S.3d at 647.

Upon review of the record, the Court finds that the state court decisions were not

contrary to or an unreasonable application of *Brady*.   Attorney Dona's correspondence to the county court demonstrates that petitioner was aware, as early as June 2012, that Gardner cooperated with law enforcement.   Indeed, Attorney Dona averred that she "discussed with [petitioner] on prior occasions the conflict of interest regarding Mr. Gardner.   After reviewing the discovery materials, counsel again discussed the conflict regarding Mr. Gardner[.]"   SR at 77.   Additionally, petitioner was present in court during the hearing on Attorney Dona's motion to be relieved as counsel and petitioner indicated to the court that he understood the proceedings.   *Id*. at 907.   Because petitioner had "actual knowledge" of the relevant information, he had sufficient opportunity to investigate the matter and present evidence related to the agreement.   Therefore, the government did not violate *Brady*.   *See Sell v. Conway*, No. 6:10-CV-6182, 2014 WL 2708381, at *12 (W.D.N.Y. June 16, 2014) (holding that because the defendant was on notice of the cooperation agreement, he was "aware of the essential facts enabling him to take advantage of any exculpatory evidence").

Even if petitioner could prove he did not have "actual notice" of the information, to establish a *Brady* violation, petitioner must establish that the suppressed evidence was material.   The subject evidence constitutes impeachment evidence and, as such, may be material where the witness in question supplied the only evidence linking a defendant to a crime or where the likely impact on the witness's credibility would have undermined a critical element of the prosecution's case.   *United States v. Avellino*, 136 F.3d 249, 256–57 (2d Cir. 1998); *United States v. Diaz*, 176 F.3d 52, 108 (2d Cir. 1999).   Here, Gardner's testimony was not the only evidence linking petitioner to the crimes.   As noted by the Appellate Division, there was strong evidence against defendant and "independent proof separate and apart from Gardner's testimony establishing defendant's participation in the robbery[.]"

21

*Lalonde*, 74 N.Y.S.3d at 647.  Indeed, the prosecution called several witnesses to testify regarding petitioner's involvement in the robbery.  Wells, Mashaw, and Mozingo provided testimony concerning petitioner's plans to commit the robbery.  Wells also provided testimony connecting petitioner with the ax that Wells brought to his brother-in-law's house that was not returned and was recovered at the scene.  The prosecution also presented testimony from police witnesses related to the recovery of a weapon and glove at the scene and submitted evidence that DNA on the ax handle and glove belonged to petitioner.  The investigating officer also testified about his interviews with petitioner that included contradictory statements.  The jury also heard testimony from two witnesses, Perry and McGregor, who testified that petitioner admitted to the robbery.  Accordingly, Gardner's testimony was not the only evidence linking petitioner to the crime.  *See Garner*, 2007 WL 2846907, at *27 (finding evidence not material where the witness did not supply the only evidence of the necessary elements of the crime of first degree manslaughter); *see also Bouloute v. United States*, 645 F.Supp.2d 125, 134 (E.D.N.Y. 2009) (holding that the evidence was not material because the witness' testimony was not the only evidence linking the petitioner to the crimes for which he was convicted).

Additionally, while petitioner contends that the information could have been used to discredit Gardner's testimony, based upon a review the transcript of Gardner's cross-examination, the Court does not agree.  Even without evidence of the cooperation agreement, petitioner's counsel and co-defendants' counsel vigorously cross-examined Gardner related to his criminal history, his incentive to testify, and questioned his credibility.

On cross examination, Gardner testified he was convicted of burglary in April 2000, December 2000, December 2002 and October 2011 and criminal mischief in April 2000.  T at

22

1165-1171.  Gardner testified he was charged a total of seventeen times with three felony

convictions, including one violent felony.  *Id*. at 1186-1187.

Counsel also asked Gardner about his agreement with the prosecution:

> Q. Now, have you at any time asked the District Attorney's Office for consideration; meaning, make a request of them to do something for you in return for your cooperation in this investigation?
>
> A: Answer that? Not at first, no.
>
> Q. So is that a yes?
>
> A. Yes. Not at first I did not, no.
>
> Q. When did you?
>
> A. When they -- pretty much this trial, going back and forth -- I didn't want to do this anyway, so pretty much during the start and beginning of this trial, yes.
>
> Q. Since you've been here?
>
> A.  Since I started coming down here last Friday, yes.
>
> Q.  Okay. So since last Friday you've made a request of the District Attorney's Office -- let me ask this. Was that the discussion we had off the record yesterday morning when you first got here?
>
> A.  Yes, it was.
>
> Q.  Okay. I don't even want to get into that. That's fine. Do you know Joshua Pitts?
>
> A.  Yes, I do.
>
> Q.  Did you make some request of the District Attorney's Office with regard to charges Mr. Pitts had pending in return for your cooperation in this investigation?
>
> A. Yes, I did.

> Q. All right. And did you ask the District Attorney if they could put in -- let me rephrase that. Did you ask the District Attorney if they could assist 18 Mr. Pitts in avoiding going to jail on a conviction he had pending?
>
> A. Yes, I did.
>
> Q. And did the DA's Office say that they would do whatever they could?
>
> A. They said that they would look into it, that they couldn't guarantee anything.

T at 1202-1203.

Counsel also posed questions related to Gardner's March 21, 2011 interview with the police:

> Q. And when the police contacted you -- how did the police contact you about coming down and talking to them on the 21st of March, 2011?
>
> A. They picked me up for the burglary charge to question me about it, and during the questioning, they also told me they wanted to question me about this case.
>
> Q. Did the police offer you any kind of assistance with the burglary investigation in return for your three-page statement that day?
>
> A. No, they did not.
>
> Q. Nothing at all?
>
> A. No, they did not.

T at 1204-1205.

Accordingly, because the alleged *Brady* evidence would merely have provided "an additional basis on which to impeach Gardner, when his credibility was already questioned," petitioner has not demonstrated that the evidence was material. *See Graves v. Smith*, 811

24

F.Supp.2d 601, 616 (E.D.N.Y. 2011) (reasoning that "it is not enough that the suppressed impeachment evidence merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable"), *aff'd sub nom. Graves v. Phillips*, 531 Fed. App'x 27 (2d Cir. 2013); *see also Major v. Lamanna*, No. 9:18-CV-0418 (DNH/TWD), 2021 WL 4267851, at *23 (N.D.N.Y. Sept. 3, 2021) (dismissing *Brady* claim where the jury was aware that the witness may have had an incentive to testify for the prosecution) (citation omitted); *see also Bouloute*, 645 F.Supp.2d at 134 (reasoning that impeachment evidence is not material when it "merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable") (internal quotation marks and citation omitted).

Based upon the record, petitioner has not established that Det. Burns' report and the minutes from Gardner's plea and sentencing hearings were not material within the meaning of *Brady* and has not established that disclosure of the suppressed evidence would have produced a different result*. See United States v. Delance,* 694 Fed. App'x 829, 832-833 (2d Cir. 2017) (finding no *Brady* violation where the disclosure of the witness' statements would have been "useful" but would not have produced a different result); *see also United States v. Payne*, 63 F.3d 1200, 1211 (2d Cir. 1995) (denying *Brady* claim because other evidence of guilt "was sufficiently strong that the elimination of [the witness] testimony does not undermine our confidence in the outcome of the trial").

Accordingly, Ground Three is therefore denied and dismissed.

## B. Prosecutorial Misconduct (Ground 4)

Petitioner alleges prosecutorial misconduct during Gardner's direct examination and the prosecution's summation.  Pet. at 14-17; Traverse at 22.  Specifically, petitioner contends

the prosecutor allowed Gardner to falsely testify that he did not ask for, or receive, any benefit for testifying and the prosecutor improperly "bolstered" and "vouched" for Gardner's credibility during her summation.  *Id*.  Respondent argues petitioner's prosecutorial misconduct claim is barred on adequate and independent state law grounds and is entirely without merit.  Resp. Memo. at 39-42.

### 1. Procedural Bar

The Appellate Division cited to CPL § 440.10(2)(b) and held that petitioner's prosecutorial misconduct claim was unpreserved:

> Defendant's failure to exercise due diligence by making a timely objection with respect to Gardner's testimony in [regard to his cooperation agreement] or the People's comments during summation render his arguments regarding defendant's alleged perjury and the People's alleged prosecutorial misconduct unpreserved for review.  Thus, defendant may not collaterally attack his conviction via a CPL article 400 motion based on facts that could have [been] placed on the record during trial.

*Lalonde*, 74 N.Y.S.3d at 647.

CPL § 440.10(2)(b) provides that a court must deny a motion to vacate a judgment if that judgment "is, at the time of the motion, appealable or pending on appeal, and sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review" of the claim on direct appeal.  CPL § 440.10(2)(b).  The denial of a claim under CPL §440.10(2)(b) rests upon an independent and adequate state ground and this claim is therefore procedurally defaulted.  *Holland v. Irvin*, 45 Fed. App'x. 17, 20 (2d Cir. 2002); *McCormick v. Morrisey*, 770 F.Supp.2d 556, 563 (W.D.N.Y. 2011); *Brown v. New York State*, 374 F.Supp.2d 314, 318-19 (W.D.N.Y. 2005).

In an apparent attempt to establish cause, petitioner argues that this court must review

26

his prosecutorial misconduct claim because, due to the prosecution's *Brady* violation, he did not have the cooperation information at the time of trial.  Therefore, any objection would have been, "on the basis of mere suspicion that Gardner[ ] was not being truthful about whether he had asked the police for a benefit."  Traverse at 24.

For the reasons discussed in Part V(A) *supra*, the Court is unpersuaded by this argument.  The prosecution did not violate *Brady* by failing to produce information related to Gardner's cooperation agreement.  *See Metts v. Miller*, 995 F.Supp. 283, 294–95 (E.D.N.Y. 1997) (finding no "cause" to excuse procedural default where the prosecution had no duty under *Brady* to disclose witness telephone number and address).  Moreover, petitioner was aware of Gardner's cooperation agreement before the start of the trial and therefore, the failure to interpose timely objections to Gardner's testimony or the prosecution's summation "clearly constituted an adequate and independent state ground" for denying the prosecutorial misconduct claim.  Petitioner cannot demonstrate cause for his procedural default because "he cannot point to any reason why his trial counsel could not have raised an objection, nor does the trial transcript suggest such a reason."  *See Campbell v. Lee*, No. 11 CV 7737, 2016 WL 6901425, at *6 (S.D.N.Y. Sept. 29, 2016), *report and recommendation adopted*, 2016 WL 6892766 (S.D.N.Y. Nov. 21, 2016).

Accordingly, petitioner's prosecutorial misconduct claims are procedurally defaulted.  Even if these claims were not procedurally defaulted, no habeas relief would issue.

### 2. Merits[4]

---

[4]  Petitioner raised additional grounds for his prosecutorial misconduct claim in his Traverse.  Traverse at 22.  "[C]ourts have observed that a traverse, or reply, is not a proper vehicle for raising additional grounds for habeas relief, and claims raised for the first time in such a pleading have been considered as not properly before the court." *Lee v. Greene*, No. 9:05-CV-1337 (GTS/DEP), 2010 WL 5779440, at *5 (N.D.N.Y. Dec. 15, 2010) (citing Rules Governing Section 2254 Cases in the United States District Courts, Rule 2(c)(1)), *report and recommendation*

A criminal defendant's right to a fair trial is mandated by the Due Process Clause of the United States Constitution. *Albright v. Oliver*, 510 U.S. 266, 273 n.6 (1994) (citing *United States v. Agurs*, 427 U.S. 97, 107 [1976]). However, for habeas relief to be granted based on a claim of prosecutorial misconduct, the alleged misconduct must have " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 [1974]). In considering such a claim, courts are to focus on "the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

Prosecutors may not knowingly present false testimony. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). To establish misconduct premised upon the presentation of perjury, a petitioner must first establish that perjury was committed; i.e. that the testimony was "actually, and intentionally, false." *Moore v. Greiner*, No. 1:02-CV-6122, 2005 WL 2665667 at *13 (S.D.N.Y. Oct. 19, 2005); *Dinsio v. Donnelly*, No. 9:03-CV-0779 (LEK/VEB), 2007 WL 4226396 at *6-7 (N.D.N.Y. Sept. 25, 2007), *adopted* 2007 WL 4226390 (N.D.N.Y. Nov. 26, 2007); *Anekwe v. Phillips*, No. 1:05-CV-2184, 2007 WL 1592973 at *6 (E.D.N.Y. May 31, 2007). He must also establish that "the prosecution knew, or should have known, of the perjury," and "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Dinsio*, 2007 WL 4226396, at *7 (quoting *Agurs*, 427 U.S. at 103);

---

*adopted*, 2011 WL 500673 (N.D.N.Y. Feb. 10, 2011). Prosecutorial misconduct claims based upon the prosecutor's reference to DNA in the summation were not raised in the Petition. Moreover, petitioner did not indicate to the Court, prior to filing his Traverse, that he intended to assert new or additional claims. Therefore, respondent was not afforded an adequate opportunity to address these additional claims and those claims are rejected. *Howard*, 2008 WL 3925466, at *1; *see also Parker v. Smith*, 858 F.Supp.2d 229, 233 (N.D.N.Y. 2012) (refusing to address new arguments raised in the traverse that were not in the petition because a traverse or reply is not the proper pleading in which to raise additional grounds for habeas relief) (citations omitted); *Parker v. Duncan*, No. 9:03-CV-0759 (LEK/RFT), 2007 WL 2071745, at *6 (N.D.N.Y. July 17, 2007), *aff'd*, 255 Fed. App'x 565 (2d Cir. 2007).

*Dupont v. Phillips*, No. 2012 WL 2411858 at *12 (E.D.N.Y. Jun. 26, 2012) (same).

### a. Gardner's Testimony

In support his first CPL § 440 motion, petitioner provided a copy of Det. Burns' report and the transcripts from Gardner's plea and sentencing hearings.  SR at 104-120, 137-140.  Petitioner argues Gardner's testimony is in "direct contrast" to Det. Burns' report and the plea transcript.  SR at 41.  To wit, "the prosecution allowed Gardner to falsely testify that he did not ask for or receive such a benefit.  Gardner testified at trial that he did not hope to get some benefit; that nobody promised him anything; that he did not seek any benefits from the prosecution in return for his testimony; and, that the police did not offer him any help with his burglary investigation in return for his statements to them."  Pet. at 15-16.

In his first 440 motion, petitioner cited to the following exchange between counsel and Gardner related to Burns' report as evidence of perjury:

> Q.  When you made that statement, did you hope to get some
> benefit by making that statement?
>
> A.  No, I did not.
>
> Q.  So you made the statement out of a sense of honor?
>
> A.  No, I did not.
>
> Q.  You made the statement out of a sense of remorse?
>
> A.  No, I did not.

However, notably absent from petitioner's submission is the following exchange that occurred immediately after Gardner answered the question:

> MS. NISSEN: Objection. Objection to that whole line of
> questions, Your Honor, aside from whether or not he
> expected a benefit.

29

> THE COURT: They are argumentative. Questions and
> answers are stricken from the record. The jury is instructed to
> disregard them.

T at 1178.  Because the testimony was stricken from the record and a curative instruction

was given, the testimony does not provide support for a prosecutorial misconduct claim.  *See*

*Purtle v. Knowles*, 105 Fed. App'x 169, 170 (9th Cir. 2004) (finding no misconduct where the

petitioner based his claim upon testimony that was immediately struck and the court

instructed the jury to disregard the stricken testimony).

Even assuming petitioner could prove Gardner offered perjured testimony, petitioner

proffers no evidence that the alleged misconduct "so infected the trial with unfairness as to

make the resulting conviction a denial of due process."  *See Darden*, 477 U.S. at 181

(citation and internal quotation marks omitted).  As discussed at length in Part V(A) *supra*,

the likelihood of Lalonde being convicted in the absence of Gardner's testimony would have

remained the same.  Based upon the substantial evidence of guilt presented at trial, the

Court finds no evidence to suggest that Gardner's alleged false testimony related to his

cooperation would have impacted the outcome of the trial.  *See Clemmons v. Lee*, No. 13

CIV 04969, 2021 WL 6750664, at *23 (S.D.N.Y. Oct. 28, 2021) (finding that

misrepresentations regarding a plea deal did not impact the outcome of the trial where other

evidence corroborated testimony and supported conviction), *report and recommendation*

*adopted*, 2022 WL 255737 (S.D.N.Y. Jan. 27, 2022).

### b.  Summation

As noted above, the relevant law here is *Darden*, 477 U.S. at 168, "which explained

that a prosecutor's improper comments will be held to violate the Constitution only if they so

infected the trial with unfairness as to make the resulting conviction a denial of due process."

30

*Matthews*, 567 U.S. at 45 (internal quotation marks omitted); *see also Darden*, 477 U.S. at 181; *Donnelly*, 416 U.S. at 643.  Where the claimed misconduct occurred during the course of the prosecution's closing argument, a petitioner must show " 'that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict.' " *Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir. 1998) (quoting *Bentley v. Scully*, 41 F.3d 818, 824 [2d Cir. 1994]); *see also Cooley v. Superintendent, Auburn Corr. Fac*., 09-CV-6384, 2011 WL 2651078, at *7 (W.D.N.Y. July 6, 2011).  Relevant factors to be considered in arriving at this determination include the severity of the prosecutor's conduct; the measures, if any, that the trial court took to remedy any prejudice; and the certainty of the petitioner's conviction absent the prosecutor's objectionable remarks.  *Bentley*, 41 F.3d at 824; *Floyd v. Meachum*, 907 F.2d 347, 355 (2d Cir. 1990); *Brown v. Phillips*, 03-CV-0361, 2006 WL 656973, at *7 (E.D.N.Y. Mar. 13, 2006).

Upon review of the transcript of the summations, the Court concludes that petitioner's claim that the prosecutor improperly vouched for Gardner's credibility lacks merit.  The prosecution's statement, "I submit to you that having - - that him coming in here and telling you the things that he told you was not easy for him.  It was not easy for him to testify against someone that he cared about.  That he testified he got nothing in exchange for his testimony and that only adds to his credibility (T at 2108), were a fair response to defense counsel's summations; in particular, counsel's statements about Gardner's criminal history and credibility.  *Id*. at 2051-2052, 2092; *see Jones v. Annucci*, 124 F.Supp.3d 103, 126 (N.D.N.Y. 2015) ("Although the prosecutor argued that [the witness] was 'credible' and had 'testified truthfully,' a fair reading of the record indicates that those statements were properly made in

31

response to the defense's attack on the witness's credibility.").

Moreover, in closing, the judge instructed the jury, "[t]he credibility, that is the believability, of each witness is itself an issue of fact solely and exclusively within the province of the jury. With respect to each witness you must determine to what extent you find his or her testimony credible and acceptable." T at 2126. Importantly, the law presumes the jury obeyed the trial court's instruction. *Weeks v. Angelone*, 528 U.S. 225, 226 (2000).

Finally, as discussed *supra*, due to the evidence of guilt, there is substantial certainty that Lalonde would have been convicted in the absence of the summation. *Gilmore v. Lewin*, No. 9:05-CV-1378, 2007 WL 3274863, at *6 (N.D.N.Y. Nov. 5, 2007). Taken as a whole, the prosecutor's remarks fall short of the level of egregious misconduct necessary to warrant habeas relief. *See Brown v. Keane*, No. 97 CIV. 3302, 1999 WL 446022, at *4 (S.D.N.Y. June 28, 1999) (finding that the prosecutor's "brief comment in the context of a 24–page summation and the voluminous evidence implicating [the p]etitioner did not infect the trial with unfairness or cause substantial prejudice to [the p]etitioner").

Upon review, the Court finds that the prosecutor's summation did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Matthews*, 567 U.S. at 45.

Accordingly, petitioner's claims regarding prosecutorial misconduct (Ground 4) are dismissed.

### C. Ineffective Assistance of Counsel (Grounds 1 and 2)

Lalonde contends Attorney Dona's conflict of interest resulted in ineffective assistance and that his trial attorney, Attorney Grandy was ineffective. Pet. at 7-11; Traverse at 8, 10, 15. Respondent contends that petitioner's request for habeas relief related to Attorney

Dona's representation is unexhausted.  Dkt. No. 16-1 at 31-33.  Respondent also argues that petitioner's first and second grounds are meritless.[5]  *Id*. at 33-36.

### 1. Exhaustion

Respondent alleges, without support or analysis, that petitioner failed to exhaust state court remedies for his ineffective assistance claims against Attorney Dona.  Resp. Memo. at 31-33.  Of relevance herein, in his second § 440.10 motion, petitioner argued he was "deprived of the effective assistance of counsel as a result of a conflict of interest."  SR at 1335.  Specifically, petitioner claimed Attorney Dona failed to obtain Det. Burns' statement, "stipulated away all hearings and motion practice, and her discovery requests were lacking." *Id*. at 1499-1500.  In the decision denying the motion, the county court framed the motion as one to vacate on the grounds that petitioner "was deprived ineffective assistance of counsel based upon a purported conflict of interest."  *Id*. at 1548.  The county court referred to petitioner's "conflict-based claim of ineffective assistance of counsel" and found the claim "wholly without merit."  *Id*. at 1556.

Because petitioner's allegations required the state court "to determine whether [petitioner's] counsel was ineffective due to a conflict of interest," petitioner has successfully exhausted the state court remedies with respect to the ineffective assistance of counsel claims against Attorney Dona.  *See Bonner v. Bennett*, No. 99 CIV. 11310, 2003 WL 25668056, at *9 (S.D.N.Y. June 2, 2003).

### 2. Merits

To demonstrate constitutionally ineffective assistance of counsel, a petitioner must

---

[5] Respondent did not address petitioner's claim that his trial counsel failed to object to Gardner's cross examination or the prosecution's summation.  *See* Resp. Memo. at 34-36.

show that counsel's performance fell below an objective standard of professional reasonableness, and that, but for counsel's errors, the result of the proceedings would have been different. *Premo v. Moore*, 562 U.S. 115, 121-22 (2011); *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Deficient performance requires a showing that counsel's performance fell below an objective standard of professional reasonableness. *Id.*; *Harrington v. Richter*, 562 U.S. 86, 104 (2010). "Strickland does not guarantee perfect representation, only a reasonably competent attorney." *Richter*, 562 U.S. at 110 (quoting *Strickland*, 466 U.S. at 687) (internal quotation marks and further citation omitted). A petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Even assuming a petitioner can establish counsel was deficient, he still must demonstrate prejudice. *Id*. at 693-694. This requires more than showing "the errors had some conceivable effect on the outcome," but that the counsel's errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687, 693. It is "difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." *Richter*, 562 U.S. at 111.

### a. Attorney Dona

Petitioner argues Attorney Dona's conflict of interest resulted in ineffective assistance in the following regard: (1) counsel stipulated away his ability to request any hearing except a suppression and S*andoval/Ventimiglia* hearing; (2) failed to obtain Gardner's statement to Det. Burns; and (3) refused his requests for discovery. Pet. at 7.

The Second Circuit has determined that an "actual" conflict of interest (as opposed to

34

a "per se" or "potential" conflict of interest) arises "when the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." *Armienti v. U.S.*, 234 F.3d 820, 823 (2d Cir. 2000); *see also U.S. v. Fulton*, 5 F.3d 605, 609 (2d Cir. 1993) ( "In the multiple representation context, an attorney has an actual, as opposed to a potential, conflict of interest when 'during the course of the representation, the defendants' interests . . . diverge with respect to a material factual or legal issue or to a course of action.' ") (quoting *Cuyler v. Sullivan*, 446 U.S. at 356 n. 3, 100 S.Ct. 1708 [1980]). "An actual, as opposed to a potential, conflict of interest exists when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." *United States v. Malpiedi*, 62 F.3d 465, 469 (2d Cir. 1995) (citations and internal quotation marks omitted).

"[O]nce the defendant establishes that there was an actual conflict, he need not prove prejudice, but simply that a 'lapse in representation' resulted from the conflict." *Malpiedi*, 62 F.3d at 469 (citations omitted). "To prove a lapse in representation, a defendant must demonstrate that some plausible alternative defense strategy or tactic might have been pursued, and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests. *Id.* (internal quotation marks omitted). If the petitioner is able to demonstrate this, he is exempt from proving the "prejudice" prong of the *Strickland* test. *U.S. v. White*, 174 F.3d 290, 295 (2d Cir.1999) (holding that, where a petitioner's ineffective assistance of counsel claim is based on alleged conflict of interest, the petitioner "is entitled to a presumption of prejudice if he can demonstrate that his attorney labored under an actual conflict of interest and that the actual conflict of interest adversely affected his lawyer's performance").

35

Here, the record establishes that an actual conflict existed.  *See* SR at 1555; Resp. Memo. at 31-34; *Lalonde*, 74 N.Y.S.3d at 646.  Thus, to establish ineffective assistance, petitioner must demonstrate that the conflict adversely impacted Attorney Dona's representation.  In that regard, the evidence is lacking.  Petitioner claims that Attorney Dona "stipulated away" his ability to seek hearings and refused to request "discovery" but he does not specify what hearings or discovery Attorney Dona failed to request.  Petitioner dissatisfaction with counsel's pretrial representation does not constitute a lapse in representation.  *See Martinez v. Kirkpatrick*, No. 9:09-CV-900 (MAD), 2013 WL 2250372, at *15 (N.D.N.Y. May 22, 2013).  Petitioner's challenge to Attorney Dona's failure to obtain Det. Burns' report fairs no better.  According to the record, in July 2012, counsel entered into a stipulation with the District Attorney whereby the District Attorney agreed to provide *Brady* evidence including "plea or benefit to any co-defendant or co-participant or witness."   SR at 57.  Attorney Dona also served a demand for discovery on August 2, 2012 reiterating her request for *Brady* material.  *Id*. at 59-63.  Throughout the petition, petitioner argues that the prosecution failed to produce the statement.  The record lacks any evidence establishing that the prosecution's failure was caused by Attorney Dona's alleged conflict.   Moreover, petitioner does not articulate how Attorney Dona's failure to secure additional hearings or Det. Burns' report constituted a plausible alternative defense.  *See Sloane v. Rock*, No. 09 CIV. 5923, 2011 WL 2020573, at *8 (S.D.N.Y. Apr. 6, 2011) (dismissing ineffective assistance claim where the petitioner failed to provide evidence demonstrating that counsel could have pursued an alternate strategy but did not due to a conflict of interest), *report and recommendation adopted*, 2011 WL 2070754 (S.D.N.Y. May 19, 2011).  To sum up, petitioner's arguments lack the specificity necessary to demonstrate that Attorney Dona

"fear[ed] that vigorously representing [petitioner] would harm [Gardner's] [ ] case." *See Skinner v. Duncan*, No. 01 CIV. 6656, 2003 WL 21386032, at *46 (S.D.N.Y. June 17, 2003); *Kimbrough v. Bradt*, 949 F.Supp.2d 341, 357 (N.D.N.Y. 2013) ("Although petitioner alleges that counsel omitted several alternative defense strategies, there is nothing to suggest that counsel bypassed these theories because of his alleged conflict[.]").

Having concluded that petitioner failed to demonstrate that he is exempt from establishing prejudice, Lalonde's claim against Attorney Dona should be evaluated under the *Strickland* standard.  *See Corniel v. N.Y.S. Div. of Parole*, No. 04 CV 2577, 2007 WL 1649895, at *8 (S.D.N.Y. June 6, 2007) (holding that the petitioner failed to demonstrate that the alleged shortcomings in counsel's opening statement or decision not to call certain witnesses were related to the actual conflict and could not take advantage of the presumption of prejudice).  Petitioner has not offered proof that Attorney Dona acted less than zealously during her five months representing petitioner.  Attorney Dona requested bail on petitioner's behalf, engaged in pretrial discovery, and served discovery demands.  *See Millio v. Barkley*, 48 F.Supp.2d 259, 266 (W.D.N.Y. 1999) (dismissing ineffective assistance claim where the petitioner's attorney requested that any *Brady* material be turned over to petitioner).  Petitioner also failed to demonstrate that he suffered any prejudice as a result of Attorney Dona's representation.  Accordingly, Attorney Dona's conflict of interest did not deprive Lalonde of effective assistance of counsel.

For all of these reasons, the Court finds that the evidence does not demonstrate a meritorious ineffective-assistance-of-counsel claim related to Attorney Dona.

### b.  Trial Counsel[6]

Petitioner alleges that his trial counsel was ineffective for: (1) failing to obtain Gardner's statement to Det. Burns and Gardner's plea and sentencing minutes; and (2) failing to object to Gardner's testimony and the prosecution's summation. Pet. at 9-12; Traverse at 10.  Respondent argues that the county court justifiably rejected petitioner's claims.  Resp. Memo. at 34.

While a petitioner may disagree with trial counsel's strategy, counsel is not ineffective merely because a strategy he/she employed was unsuccessful.  *See Minigan v. Donnelly*, No. 01-CV-0026A, 2007 WL 542137, at *22-23 (W.D.N.Y. Feb. 16, 2007) (citing *People v. Benevento*, 674 N.Y.S.2d 629, 632 (1998) (a reviewing court "must avoid confusing true ineffectiveness with mere losing tactics . . . a simple disagreement with strategies, tactics or the scope of possible cross-examination, weighed long after trial, does not suffice")); *Jenkins v. Unger*, 03 CV 1172 (LEK/DRH), 2007 WL 911889, at *6 (N.D.N.Y. Mar. 22, 2007) (discussing reluctance to second-guess counsel's trial strategy simply because that strategy was unsuccessful).  Similarly, counsel's "strategic decisions" related to objections are entitled to deference.  *See Martinez v. Miller*, No. 9:04-CV-0090 (GTS/DEP), 2009 WL 1272069, at *25 (N.D.N.Y. May 5, 2009) (finding that the petitioner did not demonstrate prejudice from counsel's decision not to draw attention to testimony by objecting because strategic choices

---

[6]  Petitioner raised ineffective assistance of counsel claims against Attorney Grandy in his second § 440 motion.  The court noted that petitioner's factual allegations and ineffective assistance claims were unsupported by evidentiary material.  SR at 1555-1556.  The court reasoned that it was "unable to make an independent determination as to whether defense counsel's representation of [petitioner] was so deficient as to deprive him of his right to a fair trial."  *Id.* at 1556.  Based upon the Appellate Division's analysis, the court "suspect[ed] that defendant received meaningful representation but denied the motion based upon petitioner's "incomplete" motion papers.  *Id.*  Because the state court's ruling on Lalonde's § 440 motion "reflects that the disposition was not premised on the court's view of the merits," this court will review this claim *de novo*.  *See Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007).

are entitled to great deference and are 'virtually unchallengeable' ") (citing *Strickland*, 466 U.S. at 690–91).

Upon review, the Court finds petitioner cannot establish the first prong of the *Strickland* test: there is nothing in the record to support the conclusion that trial counsel's performance was objectively unreasonable.  Indeed, a review of the trial transcript does not support Lalonde's claim that this counsel was ineffective during the proceeding.  To the contrary, the transcript reveals that petitioner's counsel participated in *Sandoval/Ventimiglia* arguments, exercised challenges during jury selection, presented articulate opening and closing statements, vigorously cross-examined the prosecution's witnesses, and made a motion to dismiss at the close of the prosecution's case.  *See Richter*, 562 U.S. at 111 (2011) ("it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy").  Petitioner has not cited to any portion of Gardner's testimony or the People's summation that his counsel should have deemed objectionable.  The failure to lodge an unspecified objection does not fall below the objective standard of reasonableness.  *See Lyons v. Conway*, No. 903-CV-503 (NAM/RFT), 2006 WL 2847281, at *8 (N.D.N.Y. Sept. 30, 2006).  Moreover, as discussed *supra*, Det. Burns' report and Gardner's plea/sentencing minutes were not *Brady* material.  Accordingly, petitioner cannot demonstrate that his trial counsel was deficient for not obtaining this material.  *See Millio*, 48 F.Supp.2d at 266; *see also Ahmed v. United States*, No. 05 CIV. 7656, 2006 WL 328339, at *12 (S.D.N.Y. Feb. 14, 2006) (citing, *inter alia, Armatullo v. Taylor*, 04 Civ. 5357, 2005 WL 2386093 at *11 (S.D.N.Y. Sept. 28, 2005) (no ineffective assistance where defense counsel did not press the government to turn over *Brady* evidence where there was no proof that alleged *Brady* material existed, and after prosecutor stated on the record that "she would turn

over the information if she had it").

Even if petitioner established that counsel's performance was deficient, petitioner cannot show prejudice; *i.e.* "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694. As noted *supra,* given the strength of evidence against petitioner, the Court cannot conclude that "but for" counsel's performance, the jury would have acquitted petitioner. *See Rodriguez*, 2017 WL 6404900, at *23. The state court record as a whole provides no basis for concluding that counsel was ineffective, particularly in light of the evidence implicating petitioner. *See generally Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986) ("It will generally be appropriate for a reviewing court to assess counsel's overall performance throughout the case in order to determine whether the 'identified acts or omissions' overcome the presumption that a counsel rendered reasonable professional assistance.") (quoting *Strickland*, 466 U.S. at 690); *Lavayen*, 311 Fed. App'x at 471. Indeed, as the Appellate Division noted, "there was ample evidence presented at trial establishing [petitioner's] presence at and participation in the subject robbery." *Lalonde*, 74 N.Y.S.3d at 642.

Accordingly, Grounds One and Two are therefore denied and dismissed.

**D. New Evidence (Ground 5)**

Petitioner argues that Gardner's statement requires a new trial.[7]   Pet. at 18-19.

The Appellate Division addressed this claim and held that Burns' report "did not constitute newly discovered evidence to the extent that it concerned facts that were already

---

[7]  Respondent did not address this argument. *See generally* Resp. Memo.

known to defendant at trial; namely, that Gardner was a cooperating witness for the People."

*Lalonde*, 74 N.Y.S.3d. at 646-647.  The Appellate Division noted, even assuming it was "new

evidence, it existed prior to trial and defendant failed to make any showing that it could not

have been produced even with due diligence on his part.  Notably defendant ultimately

procured the subject report via a Freedom of Information Law request."  *Id*. at 647, n.5.

     "In order for a new trial to be granted based on newly discovered evidence, petitioner

must show that the evidence could not with due diligence have been discovered before or

during trial, that the evidence is material, not cumulative, and that admission of the evidence

would probably lead to an acquittal."  *Clark v. Irvin*, 844 F.Supp. 899, 908 (N.D.N.Y. 1994)

(internal quotations and citations omitted).  "[E]vidence that would merely impeach a witness

may not be sufficient to warrant a new trial."  *Id.*

     Here, as the state courts repeatedly noted, the evidence is not "newly discovered" as

it was known to the defense prior to trial.  SR at 23; *Lalonde*, 74 N.Y.S.3d at 646-647.

Furthermore, the evidence "did not bear on the constitutionality" of petitioner's conviction.

*See Robertson v. Artus*, No. 9:04-CV-946 (NAM), 2008 WL 553200, at *11 (N.D.N.Y. Feb.

27, 2008).  Petitioner repeatedly argues the evidence was necessary to impeach Gardner's

credibility.  However, as noted throughout this Order, counsel for the defendants effectively

cross examined Gardner and raised questions regarding his credibility.  Moreover, the court

instructed the jury to weigh credibility during deliberations.  Accordingly, the evidence is

cumulative and insufficient to warrant a new trial.  *See Clark*, 844 F.Supp. at 907 (dismissing

"new evidence" ground where evidence related to witness credibility would not lead to an

acquittal); *see also Dexter v. Artus*, No. 01-CV-237 (TJM), 2007 WL 963204, at *11

(N.D.N.Y. Mar. 27, 2007) (explaining that a new trial is not warranted based on new evidence

that "a co-defendant received undisclosed consideration for testifying against defendant where such evidence was cumulative of impeachment evidence presented at trial").

Under these circumstances, the Appellate Division's conclusion is neither contrary to nor an unreasonable application of clearly established precedent.  Therefore, Ground 5 is denied and dismissed.

## VI.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the Petition, Dkt. No. 1, is **DENIED AND DISMISSED** in its entirety; and it is further

**ORDERED** that no Certificate of Appealability ("COA") shall issue because petitioner failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires;[8] and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

Dated: May 2, 2022
         Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge

---

[8]  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).